IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

TALISMAN DESIGNS, LLC,

PLAINTIFF,

V.

JACKSUN, AJUBENCE STORE, ALI-MOHAMED, AUDIOVIDEODIRECT, AUTOPARTSSTOREBM, BE THEBEST, BERNICE TOBY, BIAOJI, BLACKBOW, CHILIK, DEROUSTY, DUOROOL3, GUCHENGXIANGUOQINSH, HAIMAY US, HAPPY GIRL FAVORITES, HENANBAIXUANJIANZHUANZHU ANGGONGCHENGYOUXIANGONGSI, HMBHDHLP, HUBEIJIANYUNDIANZISHANGWUYOUXIANGONGSI, HXRMVE, IPSR STARTUP BV, KINGRISE, LOYAL TARGET, QIUSHUIYISE, QLINAE, QTBKV587, REAL-LISTIC, SOWULO SHOP, VARIETY SHOP-CHAO, VEAQEE, VOTPROF, WANDM, WESTBOR, WOOOW, XHOT-US, YANCHU, YICHENGTONG, YUIIUESS541, BEAUTY-SHOP2050, BOSTON-US.STORE, CPAR1454, DECADESHEALT-62, DVS_US, ELAKASHE0, JEEPFLIP45, JIKDINS, ML-9015, SHOUTMELOUD, TISHAV92, and TRIBE RETAIL,

DEFENDANTS.

Civil Action No.  2:21-cv-777

**FILED UNDER SEAL**

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Talisman Designs, LLC ("Talisman Designs" or "Plaintiff") hereby sues Defendants, the Individuals, Partnerships, and Unincorporated Associations identified in the Caption and which are set forth in **Schedule "A"** hereto (collectively "Defendants").  Defendants have offered for sale, sold, and distributed knock-off and infringing versions of Plaintiff's BACON BIN® grease

holder which closely mimic the appearance of Plaintiff's genuine product within this district and throughout the United States by operating e-commerce stores established at least via the Amazon.com marketplace using their respective Store Names and Seller Names set forth on **Schedule "A"** hereto (collectively, the "Seller IDs") ("Knock-off Product(s)").   As set forth below, Defendants are using without authorization Plaintiff's copyrighted Pig Face Sculpture ("Plaintiff's Work"), more specifically, manufacturing, importing, exporting, advertising, marketing, promoting, distributing, offering for sale and/or selling unlicensed and infringing versions of Plaintiff's Product.  In support of its claims, Plaintiff alleges as follows:

## NATURE OF THE ACTION

1. Katherine Waymire founded Talisman Designs in 2002 making handmade wine accessories and packaging out of her home.  Since then, Talisman Designs has created and innovated all of its own products and packaging.  This is a costly effort involving graphic design, industrial design and tooling.  It takes time to create, design, test, redesign and retest prototypes.  Plaintiff introduces its products to retailers via tradeshows across the country. This introduction process costs a lot of money but it is a chance to show our customers the quality and use of the product.  Today, Talisman is a well-known national brand in the gift and houseware industries.  It is recognized for its quality, inventions, creative packaging and whimsical characters.  Talisman innovates across four main categories – Baking, Prep Tools, Wood/Collections and Fun & Funky.  Each category has a different, distinct look.  Talisman's customers immediately recognize their products because of this.  For instance, in the Fun & Funky line of products, most of the products have a distinct character that is personified by a face or character.  Talisman's customers often immediately recognize their new products as being sold by them.

2. Talisman's top selling product called the Bacon Bin® bacon grease container ("Plaintiff's Product") was conceived by Waymire during a weekend at a cabin.  She often cooked bacon and used tin cans to dispose of the grease.  The tin cans were always very hot to handle and she hated not being able to recycle the cans.  When she stopped using canned goods, she disposed of the grease in a coffee mug.  One day she noticed a fly in the grease in her coffee mug and that was her moment of design.  She wanted something to look like a can (with the ridges), to be safer to hold with hot grease (vs metal), she wanted it to be fun with a whimsical piggy face, and she wanted the product to strain the grease.  The strainer adds rigidity to the product structure preventing it from collapsing while being held with hot grease. The Bacon Bin® grease holder is sold in online marketplaces such as Amazon.com and in brick and mortar stores.

3. The Plaintiff's Product is designed to both strain and then store bacon grease that is poured into it while hot (up to 500 degrees Farenheit).  The Plaintiff's Product includes a distinct tin can shape with ridges all around it and a whimsical sculpted piggy face.  The piggy face, individually, is a copyrighted sculpture (**Exhibit 3C**) ("Plaintiff's Work").

4. Defendants' sale, distribution, and advertising of the Infringing Product are highly likely to cause consumers to believe that Defendants are offering genuine versions of Plaintiff's Product when in fact they are not.  To illustrate, below are several examples which vividly show that the Infringing Product itself and the manner in which it is marketed is designed to confuse and mislead consumers into believing that they are purchasing Plaintiff's Product or that the Infringing Product is otherwise approved by or sourced from Plaintiff:

Plaintiff's Copyrighted Sculpture

Listing of Defendant elakashe0
Showing Infringing Sculpture





Plaintiff's Copyrighted Sculpture

Listing of Defendant Ali-Mohamed
Showing Infringing Sculpture





Plaintiff's Copyrighted Sculpture

Listing of Defendant Happy Girl Favorites  Showing Infringing Sculpture





Plaintiff's Copyrighted Sculpture

Listing of Defendant beauty-shop2050 Showing Infringing Sculpture





Additional photographic comparisons of Plaintiff's Product and the Infringing Products are attached as **Exhibit 1**.

5.  Defendants' Infringing Products are cheaply produced and substantially inferior to the genuine product.  Plaintiff's genuine products are made from BPA Free, FDA approved silicone that is safe up to 500 degrees Fahrenheit; it is unknown what Defendants' Infringing Products are made from.  As poorly designed and manufactured products, Defendants' Infringing Products

create serious risk since they are intended to hold up to 500 degrees Fahrenheit liquids and if they melt, collapse, or otherwise fail a user may suffer serious injury in the nature of burns. Plaintiff has received numerous calls about receiving products without the strainer. Without the support of the strainer, the walls of the container portion of the Infringing Product can be squeezed together causing hot grease to pour onto the unsuspecting consumer.

6.   The Infringing Products threaten to destroy the reputation of high quality that Plaintiff's Products have earned. Examples of on-line complaints are seen below:

"*1.0 out of 5 stars* Cute, But….
Awfully small. Lucky if it hold a fall pint. Mine came in an envelope package without a box or strainer. I'm thinking of returning"

"*1.0 out of 5 stars Ripped off!*
Product did not come with lid. I feel I have been ripped off. Who is going to go through the hassle of returning a $10.00 item…ONLY CHINA…"

"*1.0 out of 5 stars Missing head*
The package was damaged and the head was missing from the package"

7.   Plaintiff is the owner of various published photographs, videos, artwork, creative text, and product instructions appearing on Plaintiff's website talismandesigns.com. Screen shots of Plaintiff's Amazon Store and website appear in **Exhibit 2**.  Additionally, Plaintiff has taken numerous steps to protect Plaintiff's Product.  For instance, Plaintiff is the owner of U.S. Trademark Registration No. 5,398,411 for BACON BIN® for "jars for cooking grease sold empty" in Class 21.  A copy of the trademark registration certificate is attached hereto as Exhibit 3A. Plaintiff also owns U.S. Copyright Registration No.  VA-2-214-107, the subject of which is photographs of Plaintiff's Product. Additionally, Plaintiff is the owner of U.S. Copyright Registration No. VA-2-218-985 for Plaintiff's Pig Face Sculpture. Copies of the Copyright registrations and deposit copies are attached as **Exhibit 3B** and **Exhibit 3C**, respectively.

8.   On information and belief, Defendants' sale of Infringing Products gives rise to a plausible expectation that discovery will reveal that Defendants' actions all arise from the same transaction, occurrence, or series of transactions.  Specifically, on information and belief, Defendants are actively participating in a conspiracy to distribute and sell Infringing Products. For example, Defendants, on information and belief, are working together to manufacture, arrange the manufacture of and/or sell and otherwise distribute the Infringing Products. Moreover, the Infringing Products share similar characteristics including, for example, colors, size, and design, including the pig face sculpture.

9.   Plaintiff therefore brings this action for federal copyright infringement pursuant to 17 U.S.C. § 501(a), *et seq*.

## JURISDICTION AND VENUE

10.   This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332, and 1338.  This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

11.   This Court may exercise personal jurisdiction over a non-resident of the State in which the Court sits to the extent authorized by the state's laws.  Fed. R. Civ. P. 4(e). Pennsylvania authorizes personal jurisdiction over each Defendant pursuant to 42 Pa. Cons. Stat. § 5322 (a) which provides in pertinent part: "A tribunal of this Commonwealth may exercise personal jurisdiction over a person ... as to a cause of action or other matter arising from such person: (1) Transacting any business in this Commonwealth.  Without excluding other acts which may constitute transacting business for the purpose of this paragraph: (ii) The doing of a single act in this Commonwealth for the purpose of thereby realizing pecuniary benefit ... (3)

Causing harm or tortious injury by an act or omission in this Commonwealth. (4) Causing harm or tortious injury by an act or omission outside this Commonwealth ... (10) Committing any violation within the jurisdiction of the Commonwealth of any statute, home rule charter, local ordinance or resolution, or rule or regulation promulgated thereunder by any government unit or of any order of court or other government unit." In the alternative, Federal Rule of Civil Procedure 4(k) confers personal jurisdiction over the Defendants because, upon information and belief, Defendants regularly conduct, transact and/or solicit business in Pennsylvania and in this judicial district, and/or derive substantial revenue from their business transactions in Pennsylvania and in this judicial district and/or otherwise avail themselves of the privileges and protections of the laws of the Commonwealth of Pennsylvania such that this Court's assertion of jurisdiction over Defendants does not offend traditional notions of fair play and due process, and/or Defendants' illegal counterfeiting and infringing actions caused injury to Plaintiff in Pennsylvania and in this judicial district such that Defendants should reasonably expect such actions to have consequences in Pennsylvania and in this judicial district, for example:

  a. Upon information and belief, at all times relevant hereto, Defendants were and/or are systematically directing and/or targeting their business activities at consumers in the United States, including Pennsylvania, through on-line platforms with Merchant Storefronts (as defined *infra*), via on-line marketplace websites, like Amazon.com, eBay.com, Wish.com, and AliExpress.com, under the Seller IDs, as well as any and all as yet undiscovered accounts with Merchant Storefronts held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them ("User Accounts"), through which consumers in the United States, including Pennsylvania, can view the one or more of

Defendants' Merchant Storefronts that each Defendant operates, uses to communicate with Defendants regarding their listings for Infringing Products and to place orders for, receive invoices for and purchase Infringing Products for delivery in the U.S., including Pennsylvania, as a means for establishing regular business with the U.S., including Pennsylvania.

b. Upon information and belief, certain Defendants are sophisticated sellers, each operating one or more commercial businesses using their respective User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert of participation with any of them, operate storefronts to manufacture, import, export, advertise, market, promote, distribute, offer for sale and/or otherwise deal in products, including the Infringing Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them ("Merchant Storefront(s)") in wholesale quantities at significantly below-market prices to consumers worldwide, including to those in the U.S., and specifically Pennsylvania.

c. Upon information and belief, Defendants' Merchant Storefronts reflect multiple sales to consumers all over the world, including repeat sales to consumers in the U.S. and into this judicial district.

d. Upon information and belief, all Defendants accept payment in U.S. Dollars, collect and pay Pennsylvania sales tax, and offer shipping to the U.S., including to Pennsylvania.

e. Upon information and belief, at all times relevant, Defendants have transacted business with consumers located in the U.S., including Pennsylvania, for the sale and shipment Infringing Products.

f. Upon information and belief, Defendants are employing and benefiting from substantially similar, paid advertising and marketing and advertising strategies in order to make their Merchant Storefronts selling illegal goods appear more relevant and attractive to search result software across an array of search words, including but not limited to "BACON BIN".  By their actions, Defendants are causing concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff of its right to fairly compete for space within the various on-line marketplace search results and reducing the visibility of the Plaintiff's genuine Bacon Bin on various on-line marketplaces and/or diluting and driving down the retail market price for the  (ii) causing an overall degradation of the value of the goodwill associated with Plaintiff's works and goods; and (iii) increasing Plaintiff's overall cost to market its goods and educate consumers about its brand and products.

g. Upon information and belief, via one or more online chat rooms, and other communications methods, (1) Defendants monitor various lawsuits against counterfeiting and infringing, (2) Defendants consult with legal counsel to defend their illegal activities, and (3) Defendants have cooperated, communicated their plans with one another, shared information, and coordinated their efforts, all in order to create an illegal marketplace operating in parallel to the legitimate marketplace of Plaintiff's and the legally authorized resellers of Plaintiff's genuine goods.

h. Upon information and belief, Defendants are concurrently targeting their infringing activities toward consumers and causing harm in Allegheny County, Pennsylvania.

i. Upon information and belief, many Defendants likely reside and/or operate in and/or purchase the illegal goods from foreign jurisdictions with lax trademark and patent enforcement systems and are cooperating by creating an illegal stream of infringing goods.

j. Upon information and belief, Defendants are aware of Plaintiff's Product, and are aware that their illegal infringing actions alleged herein are likely to cause injury to Plaintiff in the United States, in Pennsylvania and in this judicial district specifically, as Plaintiff conducts substantial business in Pennsylvania.

k. Plaintiff is suffering irreparable and indivisible injury and suffered substantial damages as a result of Defendants' unauthorized and wrongful sale of counterfeit and infringing goods.

12. Venue is proper, *inter alia*, pursuant to 28 U.S.C. § 1391 and 28 U.S.C. §§ 1400(a) and (b) because, for example:

a.  Upon information and belief, Defendants, conduct, transact, and/or solicit business in this judicial district.

b.  Upon information and belief, Defendants or their agent(s) may be found in this district because personal jurisdiction is proper in this district.

c.  Upon information and belief, this is a judicial district in which a substantial part of the events or omissions giving rise to the infringement claims occurred, or a substantial part of the property that is the subject of the action is situated.

d.  Defendants not resident in the United States may be sued in this judicial district because personal jurisdiction is proper in this district.

## THE PLAINTIFF

13. Talisman Designs is a limited liability company organized and existing under the laws of the State of Minnesota, having its principal place of business at 4846 Park Glen Road, Minneapolis, Minnesota 55416.

14.  Talisman is, in part, engaged in the business of manufacturing and distributing throughout the world, including within this district, the BACON BIN® grease holder, through its website, talismandesigns.com, various retail establishments, and its authorized sellers on Amazon.com.  Defendants, through the sale and offer to sell Infringing Products are directly, and unfairly competing with Plaintiff's economic interest in the Commonwealth of Pennsylvania and causing Plaintiff harm within this jurisdiction.

15.  Like many other brand owners, Plaintiff suffers ongoing daily and sustained violations of its rights at the hands of infringers, such as Defendants herein, who wrongfully reproduce Plaintiff's Products for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits from the sale of their Infringing Products.  The natural and intended byproduct of Defendants' actions is the erosion and destruction of the goodwill associated with Plaintiff's Products and the destruction of the legitimate market sector in which Plaintiffs operate.

16.   The recent explosion of counterfeiting and infringement over the Internet, including through online marketplace platforms, has created an environment that requires brand owners, such as Plaintiff, to expend significant time and money across a wide spectrum of efforts in order to protect both consumers and Plaintiff from the ill effects of confusion and the erosion of the goodwill associated with Plaintiff's brand and products.

## THE DEFENDANTS

17.   The Defendants are individuals and/or business entities of unknown makeup, each of whom, upon information and belief, either reside or operate in foreign jurisdictions, or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).  Defendants target their business activities toward consumers throughout the United States, including within this district, and conduct pervasive business through the operation of, at least, one fully interactive commercial Internet based e-commerce store via, at least, the Internet based online marketplaces, Amazon.com, eBay.com, Wish.com, and AliExpress.com under the Seller IDs.

18.   Defendants use aliases in conjunction with the operation of their businesses, including but not limited to those as set forth in **Schedule "A"** hereto.

19.   Defendants are the past and present controlling forces behind the sale of products bearing and/or using infringements of the Plaintiff's Work, and/or a substantially similar copy of Plaintiff's Work as described herein using at least the Seller IDs.

20.   Upon information and belief, Defendants directly engage in using infringements of the Plaintiff's Work, to consumers within the United States and this district through several fully interactive, commercial Internet websites and Internet based e-commerce stores operating under,

at least, the storefronts, the Seller IDs, and any additional domain names, websites and corresponding website URLs or seller identifications and store URL aliases not yet known to Plaintiff.  Defendants have purposefully directed some portion of their illegal activities towards consumers in the Commonwealth of Pennsylvania through the advertisement, offer to sell, sale, and/or shipment of Infringing Products into the Commonwealth.

21.  Defendants have registered, established or purchased, and maintained the on-line marketplace website storefronts and Seller IDs.  Upon information and belief, Defendants have engaged in fraudulent conduct with respect to the registration of the storefronts and Seller IDs by providing false and/or misleading information to the Internet based e-commerce platforms where they offer for sale and/or sell, during the registration or maintenance process related to their respective Seller ID.  Upon information and belief, Defendants have anonymously registered and maintained some of the Seller IDs for the sole purpose of engaging in illegal infringing activities.

22.  Upon information and belief, Defendants will continue to register or acquire new seller identification aliases for the purpose of selling and offering for sale goods bearing and/or using confusingly similar imitations of Plaintiff's Work unless preliminarily and permanently enjoined.

23.  Defendants' Internet-based businesses amount to nothing more than illegal operations established and operated in order to infringe the intellectual property rights of Plaintiff.

24.  Defendants' business names, i.e., the Seller IDs, associated payment accounts, and any other alias seller identification names used in connection with the sale of infringing goods bearing and/or using Plaintiff's Work are essential components of Defendants' online activities and are the means by which Defendants further their infringement scheme and cause harm to

Plaintiff.  Moreover, Defendants are using Plaintiff's Work to drive Internet consumer traffic to their e-commerce stores operating under the Seller IDs, thereby creating and increasing the value of the Seller IDs and decreasing the size and value of Plaintiff's legitimate consumer marketplace at Plaintiff's expense.

**COMMON FACTUAL ALLEGATIONS**

**Plaintiff's Bacon Bin**

25. Plaintiff developed and sells its bacon grease storage container under the registered trademark BACON BIN®. The Plaintiff's Work has acquired secondary meaning and is valid and subsisting mark. The secondary meaning was acquired before the Defendants' use of the Plaintiff's Work. The Plaintiff's Product is designed to both strain and then store grease that is poured into it while hot. Plaintiff identified the need for this product and created the market for this product. Below are a few images of one of BACON BIN® product, which retails for $15.00:







26.   BACON BIN® bacon grease containers have unique ornamental features, including a whimsical sculpted piggy face sculpture top, an inherently distinct feature that functions as a source identifier for the Plaintiff's Product.

27. Plaintiff's Work in interstate commerce to identify and distinguish Plaintiff's goods.

28. Plaintiff's Work has been used by the Plaintiff prior in time to Defendants' use of the work. The Plaintiff's Work has never been assigned or licensed to any of the Defendants in this matter.

29. Plaintiff's Work is a symbol of Plaintiff's quality, reputation, and goodwill and has never been abandoned.

30. Plaintiff's Product has been features in videos and media outlets, including the NBC "Today Show", ABC's "Good Morning America", and *Buzz Feed*.

31. Genuine goods bearing the Plaintiff's Work are widely legitimately advertised and promoted by Plaintiff, its authorized distributors, and unrelated third parties via the Internet. Over the past several years, visibility on the Internet, particularly via Internet search engines such as Google, Yahoo!, and Bing, has become increasing important to Plaintiff's overall marketing.  Thus, Plaintiff and their authorized distributors expend significant monetary resources on Internet marketing, including search engine optimization ("SEO") strategies.  Those strategies allow Plaintiff and their authorized retailers to fairly and legitimately educate consumers about the value associated with Plaintiff's brand and the goods sold thereunder. Similarly, Defendants' individual seller's stores are indexed on search engines and compete directly with Plaintiff for space in the search results.

**Defendants' Wrongful and Infringing Conduct**

32.   Upon information and belief, Defendants are, through at least the Internet based e-commerce stores operating under the Seller IDs, promoting, selling, offering for sale and distributing goods bearing and/or using confusingly similar imitations of the Plaintiff's Work, or substantially similar copies of Plaintiff's Work, while marketing Infringing Products in a willful attempt to pass off their knock-off products as genuine versions of Plaintiff's Products.

33.   E-commerce sales, including through e-commerce stores like those of Defendants, have resulted in a sharp increase in the shipment of unauthorized products into the United States. **Exhibit 4**, Excerpts from Fiscal Year 2018 U.S. Customs and Border Protection ("CBP") Intellectual Property Seizure Statistics Report.  Over 90% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large shipping containers).  *Id.*  Over 85% of CBP seizures originated from mainland China and Hong Kong. *Id.*  Counterfeit and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

34.   Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms."  **Exhibit 5**, Daniel C.K. Chow, Alibaba, Amazon, and Counterfeiting in the Age of the Internet, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); see also, report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit 6** and finding that on "at least some e-commerce platforms, little identifying information is necessary

for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary.  Counterfeiters hedge against the risk of being caught and having their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. **Exhibit 6** at p. 22.  Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated.  **Exhibit 6** at p. 39.  Further, "E-commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 5** at 186-187.

35.  Upon information and belief, Defendants did not obtain an opinion from United States Counsel about the legality of offering for sale each of the Infringing Products.

36.  Upon information and belief, Defendants' Infringing Products are of a quality substantially and materially different than that of Plaintiff's genuine goods.  Defendants, upon information and belief, are actively using, promoting and otherwise advertising, distributing, selling, and/or offering for sale substantial quantities of their Infringing Products with the knowledge and intent that such goods will be mistaken for the genuine high quality goods offered for sale by Plaintiff despite Defendants' knowledge that they are without authority to use the Plaintiff's Work.  The net effect of Defendants' actions will cause confusion of consumers, at the time of initial interest, sale, and in the post-sale setting, who will believe Defendants' Infringing Products are genuine goods originating from, associated with, and approved by Plaintiff.

37.  Defendants advertise their Infringing Products for sale to the consuming public via Internet based e-commerce stores on, at least, one Internet marketplace using at least the Seller

IDs.  In so advertising these goods, Defendants improperly and unlawfully the Plaintiff's Work, or substantially similar copies of Plaintiff's Work without Plaintiff's permission.

38.  As part of their overall infringement scheme, Defendants are, upon information and belief, concurrently employing and benefitting from substantially similar, advertising and marketing strategies based, in large measure, upon an illegal use of infringements of the Plaintiff's Work.  Specifically, Defendants are using infringements of Plaintiff's rights in order to make their e-commerce stores selling illegal goods appear more relevant and attractive to consumers online.  By their actions, Defendants are contributing to the creation and maintenance of an illegal marketplace operating in parallel to the legitimate marketplace for Plaintiff's genuine goods.  Defendants are causing, individual, concurrent and indivisible harm to Plaintiff and the consuming public by (i) depriving Plaintiff and other third parties of their right to fairly compete for space within search engine results and reducing the visibility of Plaintiff's genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with the Plaintiff's rights, and (iii) increasing Plaintiff's overall cost to market its goods and educate consumers about its brand via the Internet.

39.  Defendants are concurrently targeting their infringing activities toward consumers and causing harm within this district and elsewhere throughout the United States.  As a result, Defendants are defrauding Plaintiff and the consuming public for Defendants' own benefit. Indeed, through their willful and

40.  Plaintiff confirmed that Defendants were and/or are still currently offering for sale and/or selling Infringing Products for sale to the consuming public via Internet based e-commerce stores on, at least, one Internet marketplace using at least the Seller IDs and that

Defendants provide shipping and/or have actually shipped Infringing Products to customers located within this judicial district.

41.   There is no question that the Infringing Products themselves and the manner in which they are marketed is designed to confuse and mislead consumers into believing that they are purchasing Plaintiff's Product or that the Infringing Products are otherwise approved by or sourced from Plaintiff, thereby trading on the goodwill and reputation of Plaintiff by engaging in the unauthorized use of Plaintiff's Work, or substantially similar copies of Plaintiff's Work.

42.   At all times relevant hereto, Defendants in this action had full knowledge of Plaintiff's ownership of the Plaintiff's Work, including its exclusive right to use and license such intellectual property and the goodwill associated therewith.

43.   Defendants' use of Plaintiff's Work, and/or substantially similar copies of Plaintiff's Work, including the promotion and advertisement, reproduction, distribution, sale, and offering for sale of their Infringing Products, is without Plaintiff's consent or authorization.

44.   Defendants are engaging in the above-described illegal infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiff's rights for the purpose of trading on Plaintiff's goodwill and reputation.  If Defendants' intentional infringing activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed.

45.   Defendants' above identified infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during, and after the time of purchase. Moreover, Defendants' wrongful conduct is likely to create a false impression and deceive

customers, the public, and the trade into believing there is a connection or association between Plaintiff's genuine goods and Defendants' Infringing Products, which there is not.

46.   Defendants' payment and financial accounts are being used by Defendants to accept, receive, and deposit profits from Defendants' infringing and unfairly competitive activities connected to their Seller IDs and any other alias e-commerce stores, photo albums, seller identification names, domain names, or websites being used and/or controlled by them.

47.   Further, upon information and belief, Defendants are likely to transfer or secret their assets to avoid payment of any monetary judgment awarded to Plaintiff.

48.   Plaintiff has no adequate remedy at law.

49.   Plaintiff is suffering irreparable injury and have suffered substantial damages as a result of Defendants' unauthorized and wrongful use of Plaintiff's Work, and/or substantially similar copies of Plaintiff's Work.  If Defendants' infringing activities are not preliminarily and permanently enjoined by this Court, Plaintiff and the consuming public will continue to be harmed.

50.   The harm and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of their Infringing Products.

**The Scope of Defendants' Activities**

51.   Upon information and belief, each Defendant operates more than one merchant storefront.

52.Upon information and belief, each Defendant operates merchant storefronts across multiple e-commerce marketplaces.

53.  Upon information and belief, each Defendant has sold more than 150,000 units of the Infringing Product.

54.  Upon information and belief, each Defendant's profits from the sale of the Infringing Products totals more than $100,000.

55.  Upon information and belief, each Defendant's profits from the sale of the Infringing Products totals more than $300,000.

56.  Upon information and belief, each Defendant's profits from the sale of the Infringing Products totals more than $2,000,000.

## COUNT I – FEDERAL COPYRIGHT INFRINGEMENT (17 U.S.C. § 501(a))

57.  All the above paragraphs are incorporated herein by reference.

58.  Plaintiffs are the exclusive owner and licensee of Plaintiff's Work.

59.  Defendants had actual notice of Plaintiffs' exclusive rights in and to the Plaintiff's Work.

60.  Defendants did not attempt and therefore inherently failed to obtain Plaintiffs' consent or authorization to use, manufacture, reproduce, copy, display, prepare derivative works of, distribute, sell, transfer, rent, perform and/or market Plaintiffs' Work.

61.  Defendants' unlawful actions have caused and are continuing to cause unquantifiable damages to Plaintiff and are unjustly enriching Defendants with profits at Plaintiff's expense.

62. Without permission, Defendants knowingly and intentionally reproduced, copied, and displayed the Plaintiff's Work by manufacturing, importing, exporting, advertising, marketing,

promoting, distributing, displaying, offering for sale and/or selling products that utilize features

that are, at a minimum, substantially similar to the Plaintiff's Work.

63.  Defendants' unlawful and willful action as alleged herein constitute infringement of

the Plaintiff's Work, including Plaintiffs' exclusive rights to reproduce, distribute and/or sell

such Work in violation of 17 U.S.C. § 501(a).

64.  Defendants' knowing and intentional copyright infringement, as alleged herein, has

caused substantial and irreparable harm to Plaintiffs in an amount as yet unknown but to be

proven at trial, for which Plaintiffs have no adequate remedy at law, and unless enjoined,

Defendants will continue to cause substantial and irreparable harm to Plaintiff. Plaintiffs are

entitled to injunctive relief, Plaintiffs' actual damages and Defendants' profits in an amount to be

proven at trial, enhanced discretionary damages for willful copyright infringement, and

reasonable attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment on all Counts of this Complaint and an

award of equitable relief and monetary relief against Defendants as follows:

a.  Entry of temporary, preliminary and permanent injunctions pursuant to 17 U.S.C. §

502, and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives,

servants, employees, and all those acting in concert or participation therewith, from

manufacturing or causing to be manufactured, importing, advertising or promoting, distributing,

selling or offering to sell their Knock-Off Products; from infringing the Plaintiff's Work; from

using the Plaintiff's Work in connection with the sale of any unauthorized goods; from using any

work that may be calculated to falsely advertise the services or goods of Defendants as being

sponsored by, authorized by, endorsed by, or in any way associated with Plaintiff; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of the Plaintiff's Work in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; from engaging in search engine optimization strategies using colorable imitations of the Plaintiff's Work; from further infringement, or from otherwise unfairly competing with Plaintiff.

b. Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that upon Plaintiff's request, any Internet marketplace website operators and/or administrators that are provided with notice of the injunction, including but not limited to the online marketplaces hosted by Amazon.com, eBay.com, Wish.com, and AliExpress.com disable and/or cease facilitating access to the Seller IDs, and any other alias e-commerce stores being used and/or controlled by Defendants to engage in the marketing, promotion, offering for sale, and/or sale of goods bearing and/or using counterfeits and/or infringements of the Plaintiff's Work.

c. Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that upon Plaintiff's request, any Internet marketplace website operators and/or administrators who are provided with notice of the injunction, including but not limited to online marketplaces hosted by, Amazon.com, eBay.com, Wish.com, and AliExpress.com permanently remove from multiple platforms, which include, *inter* alia, a Direct platform, Group platform, Seller Product Management platform, Vendor Product Management platform, and Brand Registry platform, any and all listings and associated images of goods bearing and/or using counterfeits and/or infringements of the Plaintiff's Work, via the e-commerce stores operating under the Seller IDs on Schedule "A" hereto, and upon Plaintiff's request, any other

listings and images of goods bearing and/or using counterfeits and/or infringements of the Plaintiff's Work linked to the same seller or linked to any other alias seller identification name being used and/or controlled by Defendants to promote, offer for sale and/or sell goods bearing and/or using infringements of the Plaintiff's Work.

d. Entry of an Order that, upon Plaintiff's request, any Internet marketplace website operators and/or administrators who are provided with notice of the injunction, including but not limited to online marketplaces hosted by Amazon.com, eBay.com, Wish.com, and AliExpress.com immediately cease fulfillment of and sequester all goods of each Defendant or other Seller under a Seller ID bearing and/or using Plaintiff's Work in its inventory, possession, custody, or control, and surrender those goods to Plaintiff.

e. Entry of an Order pursuant to 28 U.S.C. § 1651(a), the All Writs Act, that upon Plaintiff's request, any messaging service and Internet marketplace, social media, and image hosting website operators and/or administrators for the Seller IDs who are provided with notice of the injunction, including but not limited to operators and/or administrators of Amazon.com, eBay.com, Wish.com, and AliExpress.com, identify any e-mail address known to be associated with Defendants' respective Seller IDs.

f. Entry of an order pursuant to 28 U.S.C. § 1651(a), the All Writs Act, and the Court's inherent authority, authorizing Plaintiff to serve the injunction on any e-mail service provider with a request that the service provider permanently suspend the e-mail address that used by Defendants in connection with Defendants' promotion, offering for sale, and/or sale of goods bearing and/or using infringements of the Plaintiff's Work or otherwise unfairly competing with Plaintiff.

g. For an award of Plaintiff's actual damages and Defendants' profits, pursuant to 17 U.S.C. § 504(b), in an amount to be proven at trial for willful copyright infringement of the Plaintiff's Work under § 501(a).

h. In the alternative to Plaintiffs' actual damages and Defendants' profits for copyright infringement of the Plaintiff's Work pursuant to 17 U.S.C. § 504(b), for statutory damages of $150,000.00 per infringement pursuant to 17 U.S.C. § 504(c) for willful copyright infringement, which Plaintiffs may elect prior to rendering of final judgment, together with Plaintiffs' costs and reasonable attorneys' fees and investigative fees associated with bringing this action.

k. Entry of an Order that, upon Plaintiff's request, any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the Seller IDs or other domain names, alias seller identification names, or e-commerce store names or store URLs used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s), to be surrendered to Plaintiff in partial satisfaction of the monetary judgment entered herein.

l.   Entry of an award of pre-judgment interest on the judgment amount.

m. Entry of an order for any further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff respectfully demands a trial by jury on all claims.

Respectfully submitted,

June 15, 2021                              /s/ Stanley D. Ference III
                                          Stanley D. Ference III
                                          Pa. ID No. 59899
                                          courts@ferencelaw.com

                                          Brian Samuel Malkin
                                          Pa. ID No. 70448
                                          bmalkin@ferencelaw.com

                                          FERENCE & ASSOCIATES LLC
                                          409 Broad Street
                                          Pittsburgh, Pennsylvania 15143
                                          (412) 741-8400 - Telephone
                                          (412) 741-9292 - Facsimile

                                          Attorneys for Plaintiff

# Schedule "A"
## Defendants With Store Name and Seller ID

| Defendant No. | Defendant/Store Name | Seller ID |
|---|---|---|
| 1 | JACKSUN | A11LRDDM70W8LM |
| 2 | AJUBENCE store | A39WWEZHX6GB5J |
| 3 | Ali-Mohamed | A3FQBH0TRX8OGO |
| 4 | Audiovideodirect | A3EYYKYFTRLN23 |
| 5 | AutoPartsStoreBM | A2DYSG17JBARF9 |
| 6 | Be theBest | A1BDX9IROARHIY |
| 7 | Bernice Toby | A3T8YQ5XLUIKLF |
| 8 | BIAOJI | A1LX6PJS7PMLXH |
| 9 | BLACKBOW | A19UAW4TX5XNZW |
| 10 | Chilik | A1G6Z6KL0BKF0J |
| 11 | derousty | A21XK9YNKJ0G6O |
| 12 | duorool3 | A15NHDPC0IBTF0 |
| 13 | GUCHENGXIANGUOQINSH | A2UFNDVUMYEAC0 |
| 14 | HaiMay US | AXTBY5HW04AFZ |
| 15 | Happy Girl Favorites | A2BDT38HQC29XG |
| 16 | henanbaixuanjianzhuanzhuanggongchengyouxiangongsi | A1SYRQHXYJ0H68 |
| 17 | HMBHDHLP | A2K4HGRYGNBBGF |
| 18 | HubeiJianyundianzishangwuyouxiangongsi | A10P0FXVIRQN2P |
| 19 | Hxrmve | AQ4NR49JVZ4SN |
| 20 | Ipsr Startup Bv | A1C9848DMDNBUT |
| 21 | Kingrise | A2M857F29QAE33 |
| 22 | LOYAL TARGET | A3RNIEDLRJPG90 |

| Defendant No. | Defendant/Store Name | Seller ID |
|---|---|---|
| 23 | qiushuiyise | A2HG2HB1H285KC |
| 24 | qlinae | AT73PT8B29LBR |
| 25 | QTBKV587 | A2X8VGPZ1ZS441 |
| 26 | Real-Listic | AK5INE3Z56WCR |
| 27 | Sowulo Shop | A3KL9GAKMKMLP3 |
| 28 | Variety shop-chao | A1MLZAE7NJSJW0 |
| 29 | VEAQEE | AR99PID6BK0L |
| 30 | Votprof | A3RPKO3LXM1IML |
| 31 | WANDM | A2KVE1H3Q156KX |
| 32 | westbor | AF8QO5PNQI6EG |
| 33 | WoOoW | A34OKP7II61TPM |
| 34 | Xhot-US | A2U0I32DUU2FPB |
| 35 | Yanchu | A2P2J7G588NTMV |
| 36 | yichengtong | A39KTAICNT3Q7L |
| 37 | Yuiiuess541 | A14HBLNHR7FTAB |
| 38 | beauty-shop2050 | 373482388438 |
| 38 | boston-us.store | 154435102159 |
| 40 | cpar1454 | 154423621899 |
| 41 | decadeshealt-62 | 203267131491 |
| 42 | dvs_us | 124658945025 |
| 43 | elakashe0 | 384088005109 |
| 44 | jeepflip45 | 384121333317 |
| 45 | jikdins | 333965671672 |
| 46 | ml-9015 | 363380468452 |

| Defendant No. | Defendant/Store Name | Seller ID |
|---|---|---|
| 47 | shoutmeloud | 284072848599 |
| 48 | tishav92 | 224437438412 |
| 49 | Tribe Retail | 5e3b617229e7866bfbfa74d0 |

## LISTING OF EXHIBITS

Exhibit 1 ................................Photographic Comparison of genuine BACON BIN® and Infringing Products

Exhibit 2 ................................Printout of talismandesigns.com page for BACON BIN®

Exhibit 3A .............................U.S. Trademark Reg. No. 5,398,411 for BACON BIN®

Exhibit 3B .............................U.S. Copyright Reg. No. VA2-214-107

Exhibit 3C .............................U.S. Copyright Reg. No. VA2-218-985

Exhibit 4 ................................Excerpts from Fiscal Year 2018 U.S. Customs and Border Protection Intellectual Property Seizure Statistics Report

Exhibit 5 ................................Daniel C. K. Chow, Alibaba, Amazon, and Counterfeiting in the Age of the Internet, 40 NW. J. INT'L L. & BUS. 157, 186 (2020)

Exhibit 6 ................................Report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020)